I understand we've read the briefs. We understand the issues. You've got 10 minutes. You don't have to use it all. Go right ahead. Thank you, Your Honor. I'd like to reserve at least one minute for rebuttal if needed. Your Honor, we believe that this was an exercise of the Affirmative Without Opinion was improper in this case. Speak right up, please. We believe that the A.W.O. procedure exercised by the Board of Immigration Appeals was improper in this case. This is a case involving the ineffective assistance of counsel in the violation of due process. In this type of situation, the person raised these issues on direct appeal. And the Board of Immigration Appeals basically gave no indication as to whether or not they considered the ineffective assistance of counsel claim or the due process claim, and in a sense affirmed the decision without Petitioner knowing exactly what they denied his appeal on. When there was substantial evidence of ineffective assistance of counsel, unethical practice by an attorney who was fee-splitting with a notary public, a person who was a non-attorney, we have an attorney who was neglecting his client's case for over four years, not even doing the minimal, the minimal, which would be a background check for his client, which was an essential element of one of the three prongs for a suspension of deportation, which was a defense that this person was asserting. This person prejudiced and tainted the court hearing, in which the judge placed, laid blame mostly on the Petitioner, and all because of the attorney's negligence. We believe that there was substantial prejudice in this case, so much that the application was not an application that was even, we believe, even looked at by the attorney. In fact, if you look at the record, the attorney didn't have a proper address for his client, didn't have, he claimed he didn't have a number, but she did have the same number for eight years. On two occasions, he, the judge had to correct them in terms of the address that he had for his client, in which he allegedly sent notices regarding the preparation of the, for adequate preparation of the case. Looking at the counsel. So if the lawyer had done an exemplary job and learned everything humanly possible about the Petitioner's background, and presented that to the I.J. in a stellar fashion, what would that have shown? Well, it would have shown, Your Honor, that this was suspension of deportation, not cancellation of removal. We're talking about an old statute, which was, which was a substantially lower standard, in which a person could establish extreme hardship to his or herself, based and it took into consideration length of residence, community ties, also the people, if any, who they were helping support abroad, took a lot of factors into the person's life, things that nowadays does not exist in cancellation of removal in the immigration field. So a lawyer who properly looked at this case could have prepared it in that manner. There was also some deficiencies in the case, as noted, with tax returns, with errors on them. It's a very common practice. Suspension of deportation, which was very, it's a very interesting form of law. At the time people were applying for suspension of deportation, there was not even the existence, for the most part, for temporary I.D. numbers. So the judges were asking people to pay taxes with false social security numbers. They were asking for taxes and giving them some type of benefit of accrual of good moral character, when in fact one of my questions is this, please help me. If counsel had done the best job in the world in terms of checking into criminal history, what would the lawyer have found out? Well, what would he have found out? Yes. That she does not have a criminal record. He would have found out that not only that, but he also, I think not sending the background checks for four years is just one of the most blatant examples of the neglect that he had for this case. All this attorney cared about was receiving $300 in appearance, keeping no track of the client file, no adequate preparation to reach the level of competency. And this was just a situation where you see a person who's fee-splitting, who's being paid by appearance is paying no attention to the case. And then when it comes down to it, lays the blame on a person who basically was relying on this person and the people who put her in these proceedings. This is a very common practice in immigration court, unfortunately. Is Jeffrey Frost, is that the name of the lawyer? Jeremy Frost. Jeremy Frost, is he a member of the California Bar? Yes, he is. And has any complaint been filed against him? In fact, this complaint was filed, and I personally received a phone call from an investigator regarding just what the status was about the case. But that was during the appeal process with the Board of Immigration Appeals. I never heard anything again from the investigator. But the Bar complaint was filed? It was filed. And we believe that he, in a sense, polarized the judge against Mrs. Amasquita's claim. And that, in a sense, is a very sad thing, because the judge blamed nothing on her. He even stated that she sat on her bottom and did nothing. And that's not the case. This is an attorney who had a reckless disregard for his client, and she suffered the consequences. She had the judge not only deny her on the statutory ground of good moral character, which could have been, in and of itself, a basis to deny the suspension. He went a step further and held a hearing, even though he really didn't have to, because he denied her on statutory ground that she needed to meet the good moral character. He went out and denied her on discretion. And then he went out and denied her on suspension of deport on the extreme hardship, based on her inability to properly document the claim, which was clearly, clearly the expertise of the – laid to the expertise of the attorney. May I ask you, Mr. Ayala, what record references would indicate that, based on age, health, family ties, financial status, employment history, and the economic situation in the country of her destination, going to Guatemala would be an extreme hardship? She's 38 years old. She has no family here. She is in good health. What's the extreme hardship? Well, Your Honor, if it was properly developed, we're talking about a person who's been here for 15 years. Fifteen years. That's more – that's more than – almost a third of – more than a third of her life. This is a person who's been sending money to her parents abroad for what? We don't know. That was not developed. That would – the record shows that she admits that her parents can live without her remittances. Excuse me? Her parents can support themselves without her remittances, correct? I did not see that on the record. If I did, I might have overlooked that. Administrative record 148. That's just one of the elements, if that's – if that is the correct assertion. Also community ties. She stated that she had many friends here. There – the suspension of deportation standard for extreme hardship is not cancellation – is not extremely exceptional and extremely unusual. It's a hotspot of elements that's set forth in matter of Anderson by the Board of Immigration Appeals. And this court, in fact, in the case called Contreras-Buenfil, set the stage for when she can suffer hardship by her remittances or her relationships with her parents. The standard is only extreme hardship, not extraordinary and extreme hardship. Just extreme hardship. Just – and Congress specifically abolished suspension of deportation because they felt that the extreme hardship standard was too low of a standard. We believe that if she has a proper representation, she could have met the standard, at least had a better case, a case that would have been plausibly like – as in Reyes-Melendez, she could have had success on. You wanted to save some time for rebuttal? Just a minute. You have a little over a minute. Thank you. Thank you for your argument, counsel. We'll hear from the government at this time. Good morning, Your Honors. Nora Oscoli Schwartz for the Department of Justice. We have here a case in which suspension was denied based upon three independent and fully supported discretionary grounds, none of which is reviewable, any of which was supported by the record, each of which is fatal to her case and to jurors – to judicial review. I take it it's the government's position that however inadequate in this case the counsel was, it doesn't amount to ineffective assistance accountable – Well, first of all – Can I finish? – sufficient to justify relief? I'm so sorry, Your Honor. No, it was not sufficiently ineffective for several reasons, one of which – I think the way to start the answer to that question is, yes, that's the government's position. That's the way I'll go, Your Honor. That is the government's position. That is the government's position. Do you have any dispute about the conduct that's been described both in the briefs and here in argument about these inadequacies? Absolutely, Your Honor. Primarily, the issue – one of the grounds, discretionary grounds, was finding no good moral character, not on a statutory and eligibility ground. I'm actually down a different path. Let me tell you what the path is before you assume what it is, and it's probably because I asked an inadequate question. Here's my question at the end of the line, and I'll fill in what's necessary to get here. I'm wondering if the Immigration Service has done anything about this lawyer, about allowing him to represent clients, not the lawyer who's here today, but the lawyer below. Well, Your Honor – Has he been – has there been any effort to disbar him from appearing in front of immigration judges? Well, the State Bar of California took no disciplinary action against him based on this complaint. I called them, and I checked the website before – while preparing for oral argument. I don't think that was Judge Hawkins' question. No, no, but the thing is the State Bar of California has taken no disciplinary action, although – and a complaint was filed. Is the last chapter in what I'm asking about that the INS only acts sort of in the wake of what the bar does? That's not the only time, but Petitioner did not file a complaint with the Executive Office of Immigration Review. Tell me factually what has been done in this instance about this individual lawyer, Jeremy Frost, in terms of allowing him to continue to represent clients in immigration proceedings? Well, his performance in this case was not one which apparently caught the attention of the immigration judges defective. It is Petitioner's burden to file a complaint with EOR as well. Yes, if the – May I interrupt? Because I've seen cases, and I'm thinking of Michael Gatta, which we just decided, where it appeared to me that the service acted on its own. That can happen. The service – Well, in the regulations, or case law in that case, where there was – the Petitioner was required to do anything. Well, in this case, where he has – it's Petitioner's opinion that she was misrepresented in present counsel, that his – I think we're asking different questions. We'll get back to the – what happened here. I mean, the – I guess the answer is the service hasn't done anything. The service, to my knowledge, has not done anything. And when you're saying Petitioner's burden, you were talking about Lozada, not Petitioner's burden. It was the obligation of Petitioner's to bring – in other words, you're not saying that the INS – the service isn't going to act without – unless they get a complaint from them. No, absolutely not. Lozada is – gets your foot in the door for an ineffective assistance of counsel complaint. It doesn't mean that you prevail. It also doesn't mean that the service is required to act against this individual. No, but, you know, just for example, I – yesterday's paper, the day before, had extensive quotes, I think, from the district director of the INS for the Los Angeles region, talking about widespread notario fraud. And these folks that come to this case, the same thing as a lawyer. And it sounds like this Jeremy Frost was getting referrals from notarios? Your Honor, the record is not clear. He made – a notario is also a paralegal. And there's nothing wrong with working with a paralegal and having a paralegal prepare the case. But that is not the outcome determinative issue in this case. What – I mean, that may be – there may be widespread fraud in Los Angeles, but that did not affect this case. How do we know? Because what happened here, one of the discretionary grounds was that she failed to do a background check. The basis – a background check is predicated on the person going in and providing her fingerprints. That is one thing that the attorney cannot do for her. Petitioner has to do – he cannot provide her fingerprints. He can ask for affidavits. He can ask for letters. He can have her correct the It wasn't a mistake. It was deliberate fraud and the tax returns. And the Social Security number – the fraudulent Social Security number she used was not hers. That's not what he was irate about. It was a fake daughter who didn't exist for whom she invented a Social Security number. So this was not a way to work illegally. I mean, there's no way it could have been excused. It was simply she invented a daughter to get money – more money back from the government. But that's not the bottom line. The bottom line is Now, let me ask you – because I want to – you have a question now before your time has expired. I have a different concern. I understand – and I understand your argument that it wouldn't make any difference. Okay? So I'll take that as background. The problem I have with this case and others is that the ineffective assistance of counsel claim was not presented before anybody. In other words, nobody decided that issue. So on appeal, we're essentially hearing your argument for the first time on why it doesn't make any difference. And we're hearing arguments for the first time for anybody that, in fact, it did make a difference. The BIA decided this case without deciding that issue. And it was never raised, of course, before the IJ because the IJ didn't have it. Why shouldn't we remand, even though you're likely to win, but why shouldn't we remand and say, BIA, you know, this is your job and you've got to decide these motions, the motion to remand and the question on appeal? Because this was right for streamlining because I'm aware of the case that was just decided on the – I believe it's Chen. Well, that's a different circumstance. Exactly. It's a novel issue. But this is also a different circumstance from Chen because this is a suspension case. Now, in suspension cases, I know we're under the old rules, but we have a case called Ramirez-Alejandro. Right. And that says the BIA is obligated to take new evidence on appeal under the rules that apply to suspension cases. This is not a cancellation case, and I would agree with you that streamlining might be entirely appropriate if this were. But this is a suspension case. Except – And given the fact that – let me finish. Given the fact that, A, as a due process – as a matter of due process, the BIA is obligated in suspension cases to take new Why does that require a remand? Because this is completely governed by Carice. Any error is harmless or immaterial. Again, we get back to what could she have shown that would have changed the outcome of the case. And that is something that Petitioner had to do on appeal. Ortiz teaches us that. Ortiz says, absent the submission of evidence that would have changed the outcome, we must presume that there is none. And at the – in order to prove – I mean, we've met the – we've met the requirements of – This is a very fundamental question the judge is asking you. That was never presented or decided below it. The one thing, if the BIA in this case had taken evidence as to ineffective assistance and said, we've analyzed the evidence of ineffective assistance, it doesn't overcome these other things, we reject it, we affirm. And then we would be reviewing that, but that didn't happen here. But essentially it did, because – But by ignoring it, they decided – Not by ignoring it, but under Carice, as long as – it says that the regulations say that any error was harmless or immaterial. It cannot be gainsaid that these – any – the alleged ineffective assistance of counsel affected the outcome of the proceedings. She has not shown how it would have been changed. But here's my secondary question, then. Before the BIA, just as they did yesterday, this Petitioner asked for a remand to the IJ to present additional evidence. Now, there's no ruling on that. There is no ruling on that. So how – I mean, there's an argument to be made here that because she didn't have the opportunity to present the evidence, because the ineffective assistance of counsel, that, in fact, she could have shown prejudice if afforded a hearing. Now, we're faced with a very troubling circumstance here. Either we've got to take new evidence on appeal, which we really shouldn't do, or we've got to – you know, we have to remand in these cases. It bothers me that, unlike every other circumstance, that we have to decide some of these cases have been streamlined without a finding. We have nothing to review on the motion to remand. We have no decision to review on the question of ineffective assistance of counsel. All of this is presented to us as though we were the people. But that is Petitioner's burden because she did not present the evidence to the board. All she said was counsel was ineffective because he didn't present evidence that could have helped me. But that was – They never gave her the opportunity. That was her time on appeal to the board to say, this is what effective assistance of counsel would have done. But they asked for a remand. They asked for a remand. And I'm not – I understand. Trust me. I understand your argument about the bottom line. You don't need to get back to your bottom line, because I understand prejudice. I understand which argument is not talking, Carice. I'm not discrediting that. But I'm exploring some other aspects of the case because it troubles me. And that is, if she asks for a remand and the board doesn't rule on it, her sole basis of appeal is, look, I understand I didn't make a case down below, but there is a reason why, and that's because of ineffective assistance. And the board simply says we affirm without decision that it's the decision of the I.J. without reaching the new issues on appeal. It makes it very difficult for me to say what – what – nobody's ruled on this. I understand that it wasn't specifically ruled. But, again, it was within the parameters for streamlining. I also understand that it bothers this court enormously. And I will take it back to my client. I will also report – personally take personal responsibility for reporting this case to the disciplinary board at E.R. Thank you. Thank you, Your Honor. And I'm not picking – you know, you're the messenger here. But I am. We're not shooting the messenger. We're not shooting the messenger. Oh, good, because I'm – I haven't got the wills to talk anymore. You know, while you're going back, stop the clock. Yes, please. While you're going back, you know, we've got a terrific problem up and down the line with bad lawyers. We see it here. We see it in the records. And something really needs to be done about it. And it's counterproductive for everyone concerned. And if there's some way for the BIA or the Immigration Service to – design some ways to do that, I know the folks on this Court would be more than happy to cooperate in an administrative way in doing that. It is a real problem. It is a problem. And I think what I can propose immediately is to take back to my office that as a general rule, when there are charges of ineffective assistance of a counsel, whether or not that is complied with or not, just on principle, to protect the community, because that is our responsibility also. Our client is a service agency as well as an enforcement agency. And we don't like to see bad lawyering either. I will ask our director if he would instruct attorneys when they see charges of ineffective assistance of counsel to report it to the disciplinary board and let them decide whether it warrants action or not. Would that be a good first step? Sure. It's a good first step. And we have a judge on the Court who's resident in San Francisco, Judge Marcia Berzon, who chairs a committee about this very subject. She would be the person to contact. Okay. But I will personally start the trend by reporting this particular case to this attorney. Back to the merits of this case. Did you have some rebuttal? Just briefly, Your Honor. The one case that we believe applies in terms of as far as relief, Castillo. We believe Castillo-Perez is an appropriate case where the individual was given the application, timely application, and the Board of Immigration Appeals found that that was not an effective assistance of counsel. The Ninth Circuit, even though suspension of deportation had been abolished, even though Section 309C-5 would have cut off eligibility after April 1, 1997, the Court applied an equitable tolling situation where they placed the person back in the situation they should have been had they had a full and fair opportunity to present a claim. And we feel that that would be the appropriate remedy. Do you think, I mean, it seems to me the toughest argument and the toughest rule you have is to show that it would have made a difference. Are you claiming here that you don't have to show that before us? No, I feel we do. But the thing is we're limited to what we can present. This case was placed on direct appeal. It was not a motion to reopen situation. We did the best we could with gathering the information. Unfortunately, you know, a case, a suspension case, takes time to prepare. You have to interview witnesses. You have to go after witnesses. You have to find evidence for your client. It's just not something you prepare in 20 days. It's not something you prepare in 30 days. Sometimes it takes the full year that the judges give you to prepare a proper case. And that's what should have been done in this case. And I believe that a competent attorney can make a difference in this case because this is not the highest standard of exceptional and extremely unusual. We're talking about extreme hardship, and we're talking about a standard that Congress specifically abolished because they felt that it was too low of a standard and because it applied to people who did not have qualifying relatives and they could establish the hardship based on their long-term residence and based on the accomplishments that they had. Congress specifically eliminated that from consideration. And we believe that, you know, if properly prepared, this person has a plausible chance of having success on the merits. Okay. And I gather the time for filing a motion to reopen has probably expired. Is that right? Well, we had nothing. We had no idea what they denied it on, Your Honor. The final administrative action was this board order when we had 90 days, but we had an AWO. We had no idea until the response brief as to what may have been in the minds of the board. Okay. Thank you. Okay. Thank both counsel for the argument. The case just argued will be submitted and we'll proceed to Savkin.
judges: Hawkins, Thomas, Bea